

## ZEFF LAW FIRM

Gregg L. Zeff, Esquire
Eva Zelson, Esquire
Derek J. Demeri, Esquire
*Member of PA and NJ Bars*

100 Century Parkway, Suite 160
Mt. Laurel, NJ 08054
p: (856) 778-9700
f: (609) 534-0992
zefflawfirm.com

May 6, 2022

**Via Priority Mail**

Erica Stem
Edna Mahan Correctional Facility for Women
30 County Rd 513
Clinton, NJ 08809

    Re:    **Inmate Demi Minor's Imminent & Unlawful Transfer from Edna Mahan**

Dear Administrator Stem:

This firm represents Demi Minor (#494475E), a transgender[1] inmate currently housed at Edna Mahan Correctional Facility for Women ("EMCFW"), in connection with current attempts

---

[1] As defined in the NJ Department of Corrections Internal Management Procedure on Transgender, Intersex and Non-Binary Inmates:

> **Cisgender** means a person whose gender assigned at birth (sometimes referred to as sex assigned at birth) matches their gender identity. For instance, if a person was assigned female at birth, and self-identifies as a woman or girl, that person is cisgender.
>
> . . . .
>
> **Transgender** means people whose gender identity and/or expression is different from cultural expectations based on the gender they were assigned at birth. Being transgender does not imply any specific sexual orientation. Therefore, transgender people may identify as straight, gay, lesbian, bisexual, etc. This term is an adjective. Using this term as a verb (i.e., transgendered) or noun (i.e., transgenders) is offensive and should be avoided.

Page 1

4 Letters    A-1

to transfer her out of the facility. This letter is to put you on notice that Ms. Minor's security and health are at significant risk if she is transferred and that we seek a stay of her transfer while we engage in a discussion of legal alternatives. The transfer of Ms. Minor would violate her civil rights, contrary to the New Jersey Law Against Discrimination and the *Sonia Doe v. New Jersey Department of Corrections* (MER-L-001586-19) Settlement Agreement, and expose Ms. Minor to significant risks to her physical and mental health.

As you may be aware, Ms. Minor was assigned male at birth but has since a young age understood that her sex assigned at birth was not consistent with her true internal identity. As she developed, Ms. Minor came to understand her gender identity as female, making her a transgender woman. In or around August 2020, Ms. Minor was transferred to EMCFW from South Woods State Prison after a detailed New Jersey Department of Corrections ("NJDOC") administered evaluation determining she should be housed in a facility consistent with her gender identity. Since at least October 5, 2021, Ms. Minor has been recommended by NJDOC's medial provider for "gender-affirming surgery to relieve symptoms of gender dysphoria."

In or around April 8, 2022, NJDOC discovered two cisgender female inmates housed at EMCFW, Latonia Bellamy and Melanie Goosman, were pregnant and believed Ms. Minor to be the parent to each pregnancy. During EMCFW's investigation, Ms. Minor described how Ms. Goosman would sneak into her housing unit for eight hours at a time and threaten to assault Ms. Bellamy and threaten Ms. Minor with "PREA"[2] *unless* she had sex with her. Dan Sperrazza,

---

[2] PREA refers to the Prison Rape Elimination Act and comments like Ms. Goosman's here has been described in Jane Parnell's First Monitor's Report in *United States v. State of New Jersey and Department of Corrections* as the "weaponization of PREA" in which an EMCFW inmate alleges they are "going to file a false PREA compliant on [another]."

A-2

Executive Director of External Affairs at NJDOC, nonetheless told NJ Advance Media that both pregnancies resulted from "consensual sexual relationships with another incarcerated person."[3]

After or during NJDOC's investigation, Ms. Minor, Bellamy, and Goosman all received disciplinary charges of 051 ("engaging in sexual acts with others") and 306 ("conduct which disrupts or interferes with the security or orderly running of the correctional facility") contrary to N.J.A.C. 10A:4–4.1. The 306 charges were eventually dropped for all three women.

In a notice of intent to seek nonconsensual interstate transfer provided to Ms. Minor dated April 12, 2022, EMCFW advised Ms. Minor it was seeking to transfer her to an unspecified state because she was considered an "unusual security risk." In further explanation, this EMCFW signed notice detailed that Ms. Minor's "continued housing at EMCF[W] poses a threat to the sexual safety of the Cisgender female population." Neither Ms. Bellamy nor Ms. Goosman received such notices.

After receiving this notice, the staff and administration of EMCFW has repeatedly indicated to Ms. Minor that an interstate transfer would not be sought if she was willing to move to an in-state men's facility such as the Garden State Youth Facility or the New Jersey State Prison. To facilitate such an intrastate transfer, these officials also attempted to persuade Ms. Minor to refer to her gender as male.

Should an interstate transfer occur, it is unclear (and unlikely) that state will have similar protections for transgender inmates as New Jersey or whether Ms. Minor's gender identity would

---

[3] https://www.nj.com/news/2022/04/two-women-at-nj-prison-are-pregnant-after-consensual-sex-between-inmates-doc-says.html.

A-3

be honored.[4] A large array of studies exist which describe the vulnerable status transgender women have in men's correctional facilities, including increased risk of physical violence, sexual assaults, and self-harm.[5] **Ms. Minor has repeatedly expressed serious concern for her physical and mental wellbeing should a transfer take place.**

Based on these facts, Ms. Minor would have claims if transferred under the New Jersey Law Against Discrimination ("NJLAD") for public accommodation discrimination based on sex, gender identity, and gender expression. NJLAD provides in part that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex [or] gender identity or expression." N.J.S.A. 10:5-4. Here, NJDOC is a place of public accommodation subject to the protections of NJLAD. *Cf. Ptaszynski v. Uwaneme*, 371 N.J. Super. 333, 345 (App. Div. 2004).

Despite Ms. Bellamy and Goosman each engaging in the same sexual activity with Ms. Minor, only the transgender inmate is subject to the interstate transfer. Indeed, Ms. Minor's notice of interstate transfer specifically ties this decision to her status as a transgender inmate and is clear she would not receive this notice had she been cisgender. Nor does NJDOC have a legitimate basis for this classification when: (1) Ms. Goosman initiated sexual activity with Ms. Minor under coercive circumstances; (2) Ms. Minor has been approved for (sterilizing) gender-affirming surgery since at least October 5, 2021; and (3) Ms. Minor has not had any prior disciplinary charges at EMCFW.

---

[4] *See, e.g.*, https://www.npr.org/2021/06/29/1011181718/new-jersey-prisoners-will-be-placed-based-on-gender-identity-under-a-new-policy ("Research has shown that transgender inmates face particular danger while in prison, but few states offer them protections like [New Jersey].")

[5] *See, e.g.*, https://www.ncchc.org/transgender-and-gender-diverse-health-care.

Moreover, transferring Ms. Minor would run contrary to the *Sonia Doe* settlement and NJDOC Internal Management Procedure on Transgender, Intersex and Non-Binary Inmates, which exists to support the "health, safety, and dignity" of transgender inmates and ensure their "ability to live in line with their gender identity." As detailed in Section IV.B.1. of this policy, "under no circumstances will a transgender . . . inmate's placement in line with their gender identity be considered a management or security problem solely due to their gender identity." The policy also makes clear throughout that an inmate's "own views regarding safety" is a significant factor in placing an inmate in a male or female facility. By insisting Ms. Minor can remain in state if she goes to a men's facility or sending her to a facility out of state that likely does not have similar protections for transgender inmates, NJDOC would be exposing her to unnecessary risks to her health, safety, and dignity contrary to NJDOC's own policy and settlement agreement.

Please note that a plaintiff who proves that their rights under NJLAD have been violated is entitled to compensation including compensatory damages, punitive damages, and attorney's fees. If fully litigated, this matter will result in significant attorney's fees. Ms. Minor has already significantly suffered emotionally as a result of NJDOC's illegal practices and any such transfer will unnecessarily add significant emotional distress damages to this matter.

Accordingly, to prevent further harm to Ms. Minor, and to avoid the unnecessary cost of litigation, NJDOC shall cease all efforts to transfer Ms. Minor. In the interim, NJDOC would benefit from delaying any transfer of Ms. Minor while relevant parties engage in further discussion and investigation into this matter. Should these efforts fail, this firm is prepared to file for an order to show cause to preserve Ms. Minor's rights.

A-5

Furthermore, NJDOC is hereby instructed not to delete nor modify any potentially relevant document or thing, and to fully preserve, all electronic content and communications, including but not limited to social media accounts, texts, emails and voice messages.

Very truly yours,

*/s/Derek J. Demeri*
Derek J. Demeri, Esq.
Pronouns: he/him or they/them
ddemeri@glzefflaw.com

CC:     Victoria L. Kuhn, Esq., Acting Commissioner, NJDOC <victoria.kuhn@doc.nj.gov>
          Terry Schuster, Esq., Ombudsperson, Office of the Corrections Ombudsperson
             <info@oco.nj.gov>
          Jane Parnell, Federal Monitor of EMCFW < jandjshire@msn.com>

A-6