

| | |
|---|---|
| Gregg L. Zeff, Esquire<br>Eva Zelson, Esquire<br>Derek J. Demeri, Esquire<br>*Member of PA and NJ Bars* | 100 Century Parkway, Suite 160<br>Mt. Laurel, NJ 08054<br>p: (856) 778-9700<br>f: (609) 534-0992<br>zefflawfirm.com |

July 25, 2022

**Via Overnight Mail**

Administrator David W. Richards
Garden State Youth Correctional Facility
P.O. Box 11401
Yardville, New Jersey 08620

    **Re: Inmate Demi Minor's July 27th Housing/Gender Identity Hearing**

Dear Administrator Richards:

  This firm represents Demi Minor (#494475E), a transgender[1] inmate currently housed at Garden State Youth Correctional Facility ("GSYCF"), in connection to her recent transfer to the facility from Edna Mahan Correctional Facility for Women ("EMCFW"). The purpose of this letter is to be used in an upcoming hearing on July 25, 2022 which will make determinations as to Ms. Minor's housing status and/or gender identity.

  This firm previously sent two letters on Ms. Minor's behalf. The first, dated May 6, 2022 and addressed to EMCFW Administrator Erica Stem, sought to address the facility's efforts to send Ms. Minor out of state as a security risk on the sole basis of her sex and gender identity. The

---

[1] As defined in the NJ Department of Corrections ("DOC") Internal Management Procedure on Transgender, Intersex and Non-Binary Inmates: "Transgender means people whose gender identity and/or expression is different from cultural expectations based on the gender they were assigned at birth. Being transgender does not imply any specific sexual orientation. Therefore, transgender people may identify as straight, gay, lesbian, bisexual, etc."

Page 1

second, dated July 8, 2022 and addressed to yourself in your official capacity as GSYCF Administrator, sought to address Ms. Minor's recent transfer from EMCFW to GSYCF. Both letters detailed how DOC's actions violated Ms. Minor's civil rights and discriminated against her on the basis of gender identity and sex.

As has been made clear throughout these letters, **_Ms. Minor is a woman_**. In an October 5, 2021 letter from Dr. Diana Finkle, D.O., and on file with DOC, Ms. Minor was diagnosed with gender dysphoria and "first started taking feminizing hormone therapy in [February] 2019." Since then, she "has noted breast growth, mild weight gain, and softer skin and muscles with a feminine body shape." Dr. Finkle unequivocally stated "[f]rom a medical point of view, I have no hesitation in recommending [Ms. Minor] for [gender-affirming surgery to relieve symptoms of gender dysphoria] as she meets the criteria as set forth by the World Professional Association for Transgender Health."

Since starting hormone therapy, Ms. Minor has had inconsistent access (including as a result of her transfer to a men's facility) and administration of dosages that caused adverse side-effects. These changes have resulted in wild fluctuations in her testosterone and estrogen levels and negatively interacted with Ms. Minor's diabetes. Correcting these dosages required review by a medical provider familiar with standards of care for transgender patients, which is not located in EMCFW or GSYCF, and resulted in significant delay in meeting appropriate standards of care for her hormone replacement therapy. These factors should be considered when reviewing Ms. Minor's history of hormone replacement therapy.

Despite Ms. Minor's clear physical appearance and medical diagnosis of gender dysphoria, she is nonetheless housed in a men's facility. While DOC can never unconditionally guarantee an inmate's safety in any facility, housing Ms. Minor in a men's facility contrary to her gender identity

Page 2

B-2

unquestionably *increases her risk to physical, sexual, and psychological violence*.[2] Indeed, the United States Supreme Court has long held that a correctional facility's "deliberate indifference" when "subjectively aware" of a risk of harm to a transgender inmate's safety in a men's facility violates the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825 (1994) (concluding that, when risk of harm is subjectively known, "it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom").

Any risk of harm to Ms. Minor or other inmates housed in EMCFW pales in comparison to the risk posed to Ms. Minor at a men's facility—particularly when Ms. Minor is the only transgender woman in the entire State housed in a men's facility and likely to face increased targeting from male inmates as a result. As a medical provider familiar with gender dysphoria would clarify, housing Ms. Minor contrary to her gender identity worsens her gender dysphoria, which is well documented to "result in serious medical issues such as *depression, suicidality and self-castration*."[3]

Similarly, as explained in this Firm's May 6, 2022 letter to Administrator Stem: "Should an interstate transfer occur, it is unclear (and unlikely) that state will have similar protections for transgender inmates as New Jersey or whether Ms. Minor's gender identity would be honored.[4]"

---

[2] *See, e.g.*, Nora Neus, *Trans Women Are Still Incarcerated with Men and It's Putting Their Lives at Risk*, CNN (June 23, 2021), https://www.cnn.com/2021/06/23/us/trans-women-incarceration/index.html.

[3] Jae Sevelius & Valerie Jenness, *Challenges and Opportunities for Gender-Affirming Healthcare for Transgender Women in Prison*, 13 INT'L J. PRISON HEALTH 32 (2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8263052/.

[4] *See, e.g.*, Jaclyn Diaz, *New Jersey Prisoners Will be Placed Based on Gender Identity Under a New Policy*, NPR (June 29, 2021), https://www.npr.org/2021/06/29/1011181718/new-jersey-prisoners-will-be-placedbased-on-gender-identity-under-a-new-policy ("Research has shown that transgender inmates face particular danger while in prison, but few states offer them protections like [New Jersey].")

Such a decision may also impact Ms. Minor's rights under the New Jersey Civil Rights Act.

Consistent with DOC's Internal Management Procedure on Transgender, Intersex and Non-Binary Inmates, Ms. Minor's views on her housing safety should be taken under consideration during her upcoming hearing. Should DOC conclude Ms. Minor will be permanently housed contrary to her gender identity, a record of any decision must be fully developed.

Please note that a plaintiff who proves that their civil rights have been violated is entitled to compensation including compensatory damages, punitive damages, and attorney's fees. If fully litigated, this matter will result in significant attorney's fees. Ms. Minor has already significantly suffered emotionally as a result of DOC's illegal practices and prolonged violation of her rights will unnecessarily add significant emotional distress damages to this matter.

Accordingly, to prevent further harm to Ms. Minor, and to avoid the unnecessary cost of litigation, DOC shall immediately cease housing Ms. Minor contrary to her gender identity and ensure she receives appropriate gender-affirming care. Furthermore, DOC is hereby instructed not to delete nor modify any potentially relevant document or thing, and to fully preserve, all electronic content and communications, including but not limited to social media accounts, texts, emails and voice messages.

Very truly yours,

*/s/ Derek J. Demeri*
Derek J. Demeri, Esq.

Pronouns: he/him or they/them
ddemeri@glzefflaw.com

CC: Victoria L. Kuhn, Esq., Acting Commissioner, DOC <victoria.kuhn@doc.nj.gov>
Terry Schuster, Esq., Ombudsperson, Office of the Corrections Ombudsperson <info@oco.nj.gov>