<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMI MINOR,<br><br>                    Plaintiff,<br><br>                    v.<br><br>HELENA TOME, *et al.*,<br><br>                    Defendants. | Civil Action No. 22-5579 (MAS) (LHG)<br><br>OPINION |

<u>**SHIPP, District Judge**</u>

      This matter comes before the Court on the Court's *sua sponte* screening of Plaintiff Demi Minor's civil complaint. (ECF No. 1.) As Plaintiff has been granted *in forma pauperis* status in this matter (ECF No. 2), the Court is required to screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismiss any claim which is frivolous, malicious, fails to state a claim for relief, or seeks relief from an immune defendant. Also before the Court is Plaintiff's motion seeking preliminary injunctive relief. (ECF No. 4.) For the reasons set forth below, the Court dismisses Plaintiff's complaint without prejudice in its entirety and denies Plaintiff's motion for preliminary injunctive relief.

**I.    BACKGROUND**

      Plaintiff is a biological male who identifies as transgender who is currently serving a state criminal sentence in the New Jersey prison system. (ECF No. 1 at 6.) Following Plaintiff's transfer from a men's prison to a women's prison, Plaintiff alleges that Defendants Helena Tome ("Tome"), the Assistant Commissioner of Women's Services at the NJDOC, and Alfred Kendall

("Kendall"), Director of the NJDOC's Division of Operations, attempted to persuade Plaintiff to request a transfer to another facility, and advised Plaintiff that failure to do so may result in Plaintiff being transferred to an out of state facility. (*Id.* at 6-7.) Plaintiff protested and attempted to prevent any transfer out of state. (*Id.*) In April 2022, however, Plaintiff was accused of engaging in sexual acts with two female prisoners who had become pregnant. (*Id.* at 6.) Although Plaintiff initially implies this may have been incorrect, Plaintiff later in the complaint acknowledges that Plaintiff did engage in sexual behavior with at least one of the female prisoners. (*Id.* at 18.)

Plaintiff was found guilty of the disciplinary infraction of engaging in sex acts and, as a result, Plaintiff was transferred to the Garden State Youth Correctional Facility, which houses male inmates. (*Id.* at 7.) Plaintiff was placed in a vulnerable population unit, but alleges that this unit contains at least some inmates with a history of sex crimes or gang behavior, and that these other inmates have harassed Plaintiff with insulting language, and threats of rape or other violence. (*Id.*) In July 2022, Plaintiff appealed the disciplinary infraction, and was granted a new disciplinary hearing. (*Id.* at 8.) Although Plaintiff requested to be returned to Edna Mahan, the women's prison from which Plaintiff was removed, that request has not been granted. (*Id.* at 21-22.) The NJDOC, however, has sought to find other states willing to house Plaintiff in a women's prison, but each state to which the request was made (six in total) has declined. (*Id.* at 22.)

In addition to complaints regarding the transfer, Plaintiff also alleges that prison staff have not yet provided access to gender reassignment surgery, which Plaintiff desires. (*Id.* at 8.) Although Plaintiff asserts that this amounts to a denial of medical care, the complaint indicates that the New Jersey prison system has largely accommodated Plaintiff's gender related requests. (*Id.* at 15-16.) Specifically, Plaintiff alleges that after seeking help and being diagnosed with gender dysphoria in 2019, Plaintiff was provided with hormonal treatment, was provided women's clothing, and was transferred to a women's prison. (*Id.*) Plaintiff further alleges that prison staff

2

took Plaintiff to a specialist in October 2021, who attested that Plaintiff was ready for the surgery. (*Id.* at 16.) Plaintiff was thereafter told that Plaintiff was fourth on the list to receive the surgery. (*Id.*) Although Plaintiff alleges that doctors at the new facility have declined to provide Plaintiff with a further attestation in support of surgery, Plaintiff acknowledges that each doctor told Plaintiff they were "unfamiliar" with the area of gender reassignment surgery and thus could not determine Plaintiff's suitability for it. (*Id.* at 24.) Unhappy with the progress, Plaintiff engaged in self-mutilation, causing significant damage to Plaintiff's genitals. (*Id.* at 17.) Upon this being discovered, an emergency code was called and Plaintiff was taken to the hospital to receive stitches. (*Id.*)

Based on these allegations, Plaintiff seeks to raise claims against Tome, who took part in the decision to transfer Plaintiff and to decline Plaintiff's return to Edna Mahan; Kendall, who was involved in the transfer of Plaintiff; Victoria Kuhn, Commissioner of the New Jersey Department of Corrections; Erica Stem ("Stem"), Administrator of Edna Mahan; Dr. Herbert Kaldany, mental health director for the NJDOC; and Drs. Inna Vaynberg and Abu Ashan, the two doctors who declined to provide Plaintiff attestation letters at the youth facility.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court is required to screen Plaintiff's complaint and *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

3

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). While *pro se* pleadings are to be liberally construed in conducting such an analysis, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III.  DISCUSSION

The Court construes Plaintiff's complaint to raise a number of claims[1] pursuant to 42 U.S.C. § 1983. Plaintiff alleges that: (1) Defendants Stem, Tome, and Kendall retaliated against Plaintiff with the transfer as a response to grievances in violation of Plaintiff's First Amendment rights; (2) the transfer out of Edna Mahan amounts to a denial of Due Process as Plaintiff was not present during an initial disciplinary hearing; (3) the transfer was discriminatory and amounts to a denial of equal protection; and (4) Defendants have been deliberately indifferent to Plaintiff's medical needs as Plaintiff is unhappy with the progress of Plaintiff's move towards surgery. The Court will address each claim in turn.

Plaintiff first claims that the transfer out of Edna Mahan was retaliatory in nature and was a response to Plaintiff's attempts to oppose a transfer out of state. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [the person's] constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Although Plaintiff attempts to characterize the transfer as retaliation for Plaintiff's opposition to an out of state move, Plaintiff's own allegations belie that assertion. As Plaintiff acknowledges, Plaintiff's transfer was the result of legitimate charges that Plaintiff had engaged in illicit sex acts with another inmate and was motivated to alleviate the "pressure from the press" related to the impregnation of the two female inmates. (ECF No. 1 at 13–14.) The facts provided thus suggest that Defendants' actions were not retaliatory in nature but instead were the result of Plaintiff's own actions and the resulting

---

[1] To the extent Plaintiff may have intended to raise any additional claim beyond those that this Court construes, Plaintiff is free to file an amended complaint indicating the claims Plaintiff wishes to raise and setting forth the allegations supporting each such claim.

disciplinary action, as well as the need to prevent further sexual improprieties at Edna Mahan. Plaintiff has thus failed to plead that there is a sufficient causal link between Plaintiff's opposition to being transferred out of state and the transfer out of Edna Mahan following the disciplinary charges. Plaintiff's retaliation claim must be dismissed without prejudice as a result.

Plaintiff next asserts that the transfer out of Edna Mahan, as fruit of disciplinary charges which Plaintiff contends were improperly imposed, amounts to a denial of Due Process. Prisoners, however, will only have a Due Process interest in the outcome of prison disciplinary proceedings where a vested liberty interest is impugned by those proceedings. *Poole v. Mercer Cnty. Corr. Ctr.*, No. 11-3730, 2012 WL 694689, at *2 (D.N.J. Feb. 29, 2012); *see also Mimms v. U.N.I.C.O.R.*, 386 F. App'x 32, 36 (3d Cir. 2010); *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002). Because placement in restrictive housing "does not present a dramatic departure from the basic conditions" of prison confinement, such a placement alone will not give rise to a federally protected liberty interest. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 485-86 (1995). As prisoners likewise have no constitutionally protected liberty interest in avoiding a prison transfer—even one to more adverse conditions of confinement—the Due Process clause does not mandate a hearing prior to such a transfer in the absence of a clear state created liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). As Plaintiff's disciplinary punishments included only placement in solitary confinement and a transfer to an alternative prison which Plaintiff does not allege was more restrictive, and Plaintiff has identified no state created liberty interest which would prevent the transfer without a hearing, Plaintiff has failed to allege that Plaintiff's disciplinary punishment

6

or transfer impugned a protected liberty interest subject to protection under the Due Process clause. Plaintiff's Due Process challenge to the transfer must therefore be dismissed without prejudice.[2]

Plaintiff also claims that the transfer out of Edna Mahan was discriminatory in nature and thus a denial of equal protection. To make out such a claim, a plaintiff must plead facts showing that plaintiff was "treated differently from other similarly situated [persons], and that this different treatment was the result of intentional discrimination based on [the plaintiff's] membership in a protected group." *Watlington ex. rel. FCI Schuylkill African Am. Inmates v. Reigel*, 723 F. App'x 137, 139 (3d Cir. 2018). Alternatively, an equal protection claim may instead proceed under a "class of one" theory not related to protected group status where the plaintiff alleges facts indicating that the plaintiff was treated differently from others similarly situated without a rational basis for this difference. *See, e.g., Wofford v. Lanigan*, No. 14-5723, 2015 WL 9480016, at *5 (D.N.J. Dec. 28, 2015) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 563 (2000)). Under either standard, however, a necessary condition for pleading a plausible equal protection claim is the identification of a similarly situated individual who was treated differently. *Watlington*, 732 F. App'x at 139. Plaintiff has identified no similarly situated individual, and, given the relative uniqueness of Plaintiff's situation—a biological male transferred after impregnating a female prisoner while being housed in a women's prison—it is doubtful that Plaintiff can identify such an individual. Plaintiff has thus failed to plead a plausible claim for relief under the equal protection clause and Plaintiff's discrimination claim must therefore be dismissed without prejudice.

---

[2] Plaintiff's Due Process claim is to some extent undergirded by Plaintiff's apparent belief that it is improper to ever house a transgender inmate in a male prison. The Court is aware of no binding precedent which establishes such a rule, and persuasive precedent instead suggests that there is no clearly established law setting forth rules for the housing and placement of transgender inmates. *See, e.g., Minor v. Dilks*, No. 19-18261, 2022 WL 3369707, at *6 (D.N.J. Aug. 16, 2022).

7

In the complaint's final claim, Plaintiff seeks to raise a claim for deliberate indifference to Plaintiff's medical needs. To adequately allege such a claim, Plaintiff must plead facts indicating both that Defendants knew of a serious medical need and were deliberately indifferent to that need. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003). Deliberate indifference is a "subjective standard of liability consistent with recklessness" which will be found only where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 582 (internal quotations omitted). Deliberate indifference therefore requires more than mere negligence. S*ee King v. County of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). A medical need will be considered sufficiently serious to support a constitutional claim where that need "has been diagnosed as requiring treatment or is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). Where a prisoner has received treatment, the prisoner generally may not show deliberate indifference by asserting only his disagreement or dissatisfaction with the treatment received. *See Hairston v. Dir. Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden County*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

Here Plaintiff takes issue with the slowness of the process for obtaining gender transition surgery and Plaintiff is clearly dissatisfied with the failure of the process to yet result in surgery. The complaint, however, reflects that Plaintiff, since first being diagnosed, has been provided treatment for gender dysphoria, including hormonal treatments, access to cross-sex clothing and other items, the provision of outside medical specialist care, placement on a list for potential surgery, and even placement in a women's prison prior to Plaintiff's disciplinary infraction. The complaint further indicates that, in the one clear incident of medical distress Plaintiff describes—during Plaintiff's genital self-mutilation—emergency action was taken and treatment provided.

These allegations do not suggest that Plaintiff's diagnosis has been ignored, and instead suggest that Plaintiff is merely unhappy with the speed of the course of treatment provided, which does not amount to deliberate indifference. Plaintiff's only direct claims made against the two doctors at the Garden State Youth Correctional Facility relate to Plaintiff's unhappiness with the lack of electrolysis-based hair removal and the doctors declining to provide a recommendation for a surgery whose efficacy the doctors were uncertain of as neither doctor is an expert on transgenderism. These allegations do not suggest a deliberate indifference to Plaintiff's needs, but instead reflect the doctors' caution and Plaintiff's disagreement with that caution. While Plaintiff may yet be able to pursue some species of malpractice or negligence claim against the doctor Defendants in state court based on the complaint's allegations, Plaintiff's complaint does not adequately allege that any named Defendant was deliberately indifferent to Plaintiff's medical needs. Plaintiff's deliberate indifference claim is therefore dismissed without prejudice.

As all of Plaintiff's claims as currently presented in the complaint fail to state a plausible claim for relief, Plaintiff's complaint is dismissed without prejudice in its entirety. Plaintiff, however, shall be granted leave to file an amended complaint addressing these deficiencies within thirty (30) days. Because Plaintiff's complaint is dismissed without prejudice, and as a likelihood of success on the merits is a prerequisite for the injunctive relief Plaintiff seeks, *see Ward v. Aviles*, No. 11-6252, 2012 WL 2341499, at *1 (D.N.J. June 18, 2012), Plaintiff's motion for injunctive relief (ECF No. 4) is denied without prejudice in light of the dismissal of Plaintiff's complaint.

## IV.   CONCLUSION

For the reasons expressed above, Plaintiff's complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** in its entirety, and Plaintiff's motion for injunctive relief is **DENIED WITHOUT PREJUDICE** as a result. Plaintiff is granted leave to file an amended complaint in this matter within thirty (30) days.[3] An order consistent with this Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

---

[3] Plaintiff has indicated through a motion an intention to pursue state court claims going forward. Although this Court cannot "remand" to state court a case originally filed in federal court, this Court's dismissal of Plaintiff's complaint is without prejudice to Plaintiff filing a civil complaint raising state law claims in state court. Plaintiff's motion to remand (ECF No. 8) is thus denied. In addition, Plaintiff's motion for the appointment of pro bono counsel (ECF No. 7) is denied without prejudice.